bosley-kimind2

LEONARDO M. RAPADAS
United States Attorney
KARON V. JOHNSON
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for the United States of America

**FILED**
DISTRICT COURT OF GUAM

MAR 1 2 2008

JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MI KYUNG BOSLEY, aka Mi Kyung Park,<br>and IN HYUK KIM, aka Dominic,<br><br>Defendants. | CRIMINAL CASE NO. 07-00064<br><br>**SUPERSEDING INDICTMENT**<br><br>**CONSPIRACY TO COMMIT ALIEN SMUGGLING**<br>[18 U.S.C. §§ 2 & 371]<br>(Count I)<br>**ALIEN SMUGGLING**<br>[8 U.S.C. §§ 1324(a)(1)(A)(iii) &<br>(a)(1)(B)(i)]<br>(Counts II, III & IV) |

THE GRAND JURY CHARGES:

**COUNT I - CONSPIRACY TO COMMIT ALIEN SMUGGLING**

INTRODUCTION

1. At all times relevant to this Indictment, the United States Immigration and Naturalization Service offered a Guam Tourist Visa Waiver program (GT program) which allowed Korean citizens to enter Guam as tourists for a limited period of 15 days. The program applied only to such persons who were seeking entry as tourists. It did not allow Korean citizens to enter Guam for the purposes of employment, or to be employed on Guam during the 15 days. Korean citizens gaining entry under the GT program were required to depart Guam fifteen days

-1-

from the date of entry. If they failed to do so, they remained on Guam illegally and in violation of United States immigration law.

2. Upon arrival at the Guam International Airport, Korean citizens seeking entry under the GT program were required to execute two forms, an I-736 Guam Visa Waiver Application and a I-94 Arrival/Departure Record. The I-94 form was divided into two parts: the upper half was a record of arrival, and the lower half was a record of departure. Applicants under the GT Program were required to submit both forms and their valid passports to a Customs and Border Protection (CPB) officer. If the officer approved entry, he would stamp the applicant's passport, I-94 and I-736 forms, thereby certifying that the applicant met the entry requirements under the GT program. The CPB officer would retain the I-736 form and the top portion of the I-94 (Arrival Record) form. He would staple the bottom part of the I-94 (Departure Record) into the applicant's passport. The stamp would indicate that the GT visa was valid for only 15 days from date of entry.

3. Under the GT program, CPB officers would mail the I-736 and the top part of the I-94 forms to ACS-INS-SBU, the Processing or Data Input Center. Each Korean citizen's name, passport number and date of entry would be entered into the Treasury Enforcement Computer System (TECS).

4. Upon departure under the GT program, Korean citizens were required to submit their passports to the airlines ticket counter employee when checking in for their departing flight. The airlines employee was required to remove the Departure Record portion of the I-94 form, which had been stapled to the passport. The airline was required to collect all such I-94 Departure Records for passengers on that flight, and submit the I-94 Departure Records and a copy of the passenger manifest to CBP officials. In turn, CBP officials would mail the collected I-94 Departure Records to ACS-INS-SBU for input into the TECS system. In that manner, CBP would have a record of the entry and departure date for each Korean citizen who had been admitted to Guam under the GT program.

5. Some nightclubs, karaoke lounges and bars on Guam were owned by Koreans, who desired to employ Korean women in their businesses. Women entering Guam under the GT Program were not eligible to work in these clubs. However, some Korean club owners would solicit Korean women to enter Guam under the GT program, and also solicit them to remain on Guam illegally for purposes of employment in their clubs.

6. IN HYUK KIM was employed as a ticket agent with Korean Air. MI KYUNG BOSLEY owned the Apple Lounge.

## OBJECT OF THE CONSPIRACY

7. The object of the conspiracy was the concealment by MI KYUNG BOSLEY, IN HYUK KIM, and others both known and unknown to the Grand Jury, of the employment by nightclubs and bars of Korean women who had entered Guam under the GT program and who had been induced to remain on Guam illegally and continue working, after their 15-day period had expired.

## MANNER AND MEANS OF THE CONSPIRACY

8. The conspiracy was accomplished by MI KYUNG BOSLEY and others both known and unknown to the Grand Jury, representing to women who had entered Guam under the Korean GT Program, that there was a way by which they could work on Guam without detection by the immigration authorities. MI KYUNG BOSLEY and others both known and unknown to the Grand Jury, took the passports from the women who had agreed to remain on Guam, and gave them to IN HYUK KIM. MI KYUNG BOSLEY and others both known and unknown to the Grand Jury, paid IN HYUK KIM between $300 and $400 per employee, for the purpose of filing the I-94 Departure Records so that it appeared the women had left Guam. The bar owners and the women so employed believed that women's overstays would not be detected by the agencies which enforced United States immigration laws because IN HYUK KIM represented he had filed the I-94 Departure Records with Customs & Border Protection.

9. On or between January, 2005, and January 30, 2007, within the District of Guam and elsewhere, the defendants herein, MI KYUNG BOSLEY and IN HYUK KIM, did unlawfully, willfully, and knowingly combine, conspire, confederate and agree with each other and with other persons both known and unknown to the Grand Jury, to commit an offense against the United States, to-wit: alien smuggling for commercial advantage and financial gain, in violation of Title 8, U.S.C. § 1324(a)(1)(A)(iii), and did commit overt acts in furtherance of said conspiracy and to achieve the object thereof, to-wit:

10. On or about April, 2005, Youn Kyung OH gave her passport to Jin Yu, the owner of the nightclub Club Miso, for the purpose of overstaying her GT visa without being detected by immigration officials.

11. On or about November, 2005, Hee Jeong JANG gave her passport to MI KYUNG BOSLEY for the purpose of remaining on Guam to work at the Apple Lounge without being detected by immigration officials.

12. On or about November, 2005, MI KYUNG BOSLEY gave IN HYUK KIM a passport belonging to Yeju An JANZEN for the purpose of removing the I-94 Departure Form from Janzen's passport so that she would remain on Guam and work at the Apple Lounge, without being detected by immigration officials.

13. On November 6, 2006, MI KYUNG BOSLEY accepted $1,400 in United States currency for the purpose of ensuring that the I-94 forms which had been issued to Korean nationals Su Jeong CHOI, Ji Young AN, and Jang Mi BYEON, when they entered Guam as tourists on the Korean tourist visa waiver program, were entered into the Treasury Enforcement Communication System (TECS) computer system, to make it appear they had departed Guam.

14. On November 6, 2006, MI KYUNG BOSLEY gave IN HYUK KIM $1,200 in United States currency and copies of passports and I-94 forms for three Korean nationals, Su Jeong Choi, Ji Young An and Jang Mi Byeon;

15. On November 17, 2006, MY KYUNG BOSLEY accepted $800 in United States currency for the purpose of ensuring that an I-94 form which had been issued to Korean national Mi Sun IM when she entered Guam as a tourist on the Korean tourist visa waiver program, was entered into TECS to make it appear she had departed Guam, and to ensure that Korean national Jang Mi BYEON would be able to leave Guam without having to surrender her I-94 form to U.S. Customs and Border Protection;

16. On November 17, 2006, MY KYUNG BOSLEY gave IN HYUK KIM $800 in United States currency and copies of the I-94 form for Mi Sun IM;

17. On November 17, 2006, MY KYUNG BOSLEY telephoned another individual to report that IN HYUK KIM needed the e-ticket number or airline ticket of Jang Mi BYEON;

18. On January 16, 2007, IN HYUK KIM met another individual at King's Restaurant in Harmon to discuss the status of the I-94 forms in the names of Su Jeong CHOI, Ji Young AN, Jang Mi BYEON, and Mi Sun IM,

ALL IN VIOLATION of Title 18, United States Code, Sections 2 and 371.

## COUNT II - ALIEN SMUGGLING

On or about April, 2005, within the District of Guam, the defendants herein, MY KYUNG BOSLEY and IN HYUK KIM, knowing that an alien remained in the United States in violation of law, did unlawfully and knowingly conceal, harbor, and shield from detection, and did attempt to conceal, harbor, or shield from detection, such alien, to-wit: Youn Kyung OH, for the purpose of commercial advantage and private financial gain.

ALL IN VIOLATION of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

## COUNT III - ALIEN SMUGGLING

On or about April, 2005, within the District of Guam, the defendants herein, MY KYUNG BOSLEY and IN HYUK KIM, knowing that an alien remained in the United States in violation of law, did unlawfully and knowingly conceal, harbor, and shield from detection, and

did attempt to conceal, harbor, or shield from detection, such alien, to-wit: Hee Jeong JANG, for the purpose of commercial advantage and private financial gain.

ALL IN VIOLATION of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

### COUNT IV - ALIEN SMUGGLING

On or about April, 2005, within the District of Guam, the defendants herein, MY KYUNG BOSLEY and IN HYUK KIM, knowing that an alien remained in the United States in violation of law, did unlawfully and knowingly conceal, harbor, and shield from detection, and did attempt to conceal, harbor, or shield from detection, such alien, to-wit: Yeju An JANZEN, for the purpose of commercial advantage and private financial gain.

ALL IN VIOLATION of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

Dated this 12th day of March, 2008.

A TRUE BILL.

REDACTED

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: _____
KARON V. JOHNSON
Assistant U.S. Attorney

Reviewed:

By: _____
JEFFREY J. STRAND
First Assistant U.S. Attorney