

LEONARDO M. RAPADAS
United States Attorney
KARON V. JOHNSON
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910-5009
TEL: (671) 472-7332
FAX: (671) 472-7334

FILED
DISTRICT COURT OF GUAM
APR 28 2008 RD
JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>MI KYUNG BOSLEY, aka<br>MI KYUNG PARK.,<br>Defendant. | CRIMINAL CASE NO. 07-00064<br><br>**AFFIDAVIT IN SUPPORT OF REQUEST FOR EXTRADITION** |

Your Affiant, KARON V. JOHNSON, being first duly sworn, does depose and say:

1. I am a citizen of the United States of America. I currently reside in the United States Territory of Guam.

2. I submit this affidavit in support of the request for the extradition of MI KYUNG BOSLEY, also known as MI KYUNG PARK.

3. I received a Bachelor of Science Degree from the University of Minnesota in December, 1966. I received a Masters of Science Degree from the University of Oregon in June, 1971. I received a Juris Doctor from the University of Oregon School of Law in June, 1976. In September, 1976, I was admitted to the Bar of the State of Oregon. I was admitted to the Bar of the United States Court of Appeals for the Ninth Circuit in June, 1989.

4. My legal experience in criminal litigation is as follows. In September, 1976, I was employed as a Deputy District Attorney for Multnomah County, Oregon. During the next 13

years I directed the investigation and prosecution of hundreds of felony crimes and tried over 300 misdemeanor and felony jury and court trials. I was a Senior Deputy District Attorney when I left the District Attorney's Office in March, 1989. From March, 1989, to the present I have been employed with the United States Department of Justice as an Assistant United States Attorney in the Districts of Guam and the Commonwealth of the Northern Mariana Islands (CNMI). My duties include the investigation of criminal violations of the laws of the United States and the charging and prosecution of persons who violate these laws. During my practice as an Assistant United States Attorney, I have become knowledgeable about the criminal laws and procedures of this District and the United States, particularly in the area of alien smuggling, as described in Title 8 of the United States Code.

5. As an Assistant U.S. Attorney for the District of Guam, my responsibilities include the investigation and prosecution of the criminal case named United States v.Mi Kyung Bosley, aka Mi Kyung Park, and In Hyuk Kim, District Court of Guam Criminal Case Number 07-0064.

6. On July 25, 2007, a federal grand jury, sitting in the District of Guam, returned and filed an indictment charging MI KYUNG BOSLEY, aka MI KYUNG PARK (Bosley) and a confederate, In Hyuk Kim, with Conspiracy to Commit Alien Smuggling, in violation of Title 18, United States Code, Sections 2 and 371. ON MARCH 12, 2008, A FEDERAL GRAND JURY, SITTING IN THE DISTRICT OF GUAM, RETURNED AND FILED A SUPERSEDING INDICTMENT CHARGING MI KYUNG BOSLEY AKA MI KYUNG PARK (BOSLEY) AND A CONFEDERATE, IN HYUK KIM, WITH CONSPIRACY TO COMMIT ALIEN SMUGGLING, IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTIONS 2 AND 371, AND THREE COUNTS OF ALIEN SMUGGLING, IN VIOLATION OF TITLE 8, UNITED STATES CODE, SECTION 1324(a)(1)(A)(iii) and (a)(1)(B)(I). An indictment is a formal accusation or charging document issued by a grand jury, which is part of the judicial branch of the U.S. Government. A grand jury is a group of 16 to 23 citizens who review the evidence of crimes presented to it by the United States law enforcement authorities. Each member of the grand jury must review independently the evidence presented and determine if

there is probable cause to believe that a crime has been committed and that the particular defendant or defendants committed the crime. After at least twelve (12) grand jurors affirmatively vote that the defendant probably committed the crime or crimes, the grand jury may return an indictment charging the defendant with a crime. After the grand jury returns an indictment, a warrant for the defendant's arrest is issued at the discretion of a United States District Court judge or magistrate.

7. ON MARCH 12, 2008, DEPUTY CLERK MARILYN B. ALCON ISSUED A WARRANT FOR BOSLEY'S ARREST FOR THE OFFENSES CHARGED IN THE SUPERSEDING INDICTMENT. Deputy Clerk Marilyn B. Alcon had authority to issue the warrant for the arrest of Bosley. It is the practice in the U.S. District Court for the District of Guam for the Clerk of Court to retain the originals of all complaints, indictments and warrants of arrest, and to file them with the records of the Court. Therefore, I have obtained true and accurate copies of the superseding indictment and arrest warrant from the Clerk of Courts and have attached them to this affidavit as Exhibits A and B respectively.

8(a). The statutes cited in the indictment, and those that form the basis for the United States' request for extradition, are Title 18, United States Code, Sections 2 and 371, and Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i). A violation of these statutes is a felony under the United States law and carries a penalty in excess of one year incarceration. Each of these statutes was duly enacted law of the United States at the time that the time the indictment was filed, and remain in effect full force and effect. The text of the statutes which apply to this case is attached hereto as Exhibit C.

8(b). Also included as part of Exhibit C is the text of the statue of limitations applicable to the prosecution of this offense, Title 18, United States Code, Section 3282(a). As the indictment was filed within five years of the offense, this prosecution is not barred by the statute of limitations.

9(a). I attest that the specific violations in the Superseding Indictment which support the Warrant of Arrest are as follows:

## INTRODUCTION

1. At all times relevant to this Indictment, the United States Immigration and Naturalization Service offered a Guam Tourist Visa Waiver program (GT program) which allowed Korean citizens to enter Guam as tourists for a limited period of 15 days. The program applied only to such persons who were seeking entry as tourists. It did not allow Korean citizens to enter Guam for the purposes of employment, or to be employed on Guam during the 15 days. Korean citizens gaining entry under the GT program were required to depart Guam fifteen days from the date of entry. If they failed to do so, they remained on Guam illegally and in violation of United States immigration law.

2. Upon arrival at the Guam International Airport, Korean citizens seeking entry under the GT program were required to execute two forms, an I-736 Guam Visa Waiver Application and a I-94 Arrival/Departure Record. The I-94 form was divided into two parts: the upper half was a record of arrival, and the lower half was a record of departure. Applicants under the GT Program were required to submit both forms and their valid passports to a Customs and Border Protection (CBP) officer. If the officer approved entry, he would stamp the applicant's passport, I-94 and I-736 forms, thereby certifying that the applicant met the entry requirements under the GT program. The CBP officer would retain the I-736 form and the top portion of the I-94 (Arrival Record) form. He would staple the bottom part of the I-94 (Departure Record) into the applicant's passport. The stamp would indicate that the GT visa was valid for only 15 days from date of entry.

3. Under the GT program, CBP officers would mail the I-736 and the top part of the I-94 forms to ACS-INS-SBU, the Processing or Data Input Center. Each Korean citizen's name, passport number and date of entry would be entered into the Treasury Enforcement Computer System (TECS).

4. Upon departure under the GT program, Korean citizens were required to submit their passports to the airlines ticket counter employee when checking in for their departing flight. The airlines employee was required to remove the Departure Record portion of the I-94 form, which had been stapled to the passport. The airline was required to collect all such I-94 Departure

Records for passengers on that flight, and submit the I-94 Departure Records and a copy of the passenger manifest to CBP officials. In turn, CBP officials would mail the collected I-94 Departure Records to ACS-INS-SBU for input into the TECS system. In that manner, CBP would have a record of the entry and departure date for each Korean citizen who had been admitted to Guam under the GT program.

5. Some nightclubs, karaoke lounges and bars on Guam were owned by Koreans, who desired to employ Korean women in their businesses. Women entering Guam under the GT Program were not eligible to work in these clubs. However, some Korean club owners would solicit Korean women to enter Guam under the GT program, and also solicit them to remain on Guam illegally for purposes of employment in their clubs.

6. IN HYUK KIM was employed as a ticket agent with Korean Air.

## OBJECT OF THE CONSPIRACY

7. The object of the conspiracy was the concealment by MI KYUNG BOSLEY, IN HYUK KIM, and others both known and unknown to the Grand Jury, of the employment by nightclubs and bars of Korean women who had entered Guam under the GT program and who had been encouraged to remain on Guam illegally and continue working, after their 15-day period had expired.

## MANNER AND MEANS OF THE CONSPIRACY

8. The conspiracy was accomplished by having IN HYUK KIM conceal the employment of women who had entered Guam under the Korean GT Program women by filing their I-94 Departure Records, though the women remained on Guam. Bar and nightclub owners were recruiting women from Korea to enter Guam as tourists under the GT program, for the purpose of employing them at their clubs. Bar and nightclub owners were also recruiting employees by approaching Korean women who had entered Guam legitimately through the GT program, and inducing them to overstay their visas and go to work at their clubs. For each woman who agreed to overstay her visa, the bar owners would pay IN HYUK KIM between $300 and $400, and give IN HYUK KIM the I-94 Departure Record for the woman. IN HYUK KIM represented that he would file the woman's I-94 Departure Record, so that it appeared she had left Guam. The bar

owners and the women so employed believed that women's overstays would not be detected by the agencies which enforced United States immigration laws because IN HYUK KIM represented he had filed the I-94 Departure Records with Customs & Border Protection.

9. On or between January, 2005, and January 30, 2007, within the District of Guam and elsewhere, the defendants herein, MI KYUNG BOSLEY and IN HYUK KIM, did unlawfully, willfully, and knowingly combine, conspire, confederate and agree with each other and with other persons both known and unknown to the Grand Jury, to commit an offense against the United States, to-wit: alien smuggling for commercial advantage and financial gain, in violation of Title 8, United States Code, Section1324(a)(1)(A)(iii), and did commit overt acts in furtherance of said conspiracy and to achieve the object thereof, to-wit:

10. On or about April, 2005,Youn Kyung OH gave her passport to Jin Yu, the owner of the nightclub Club Miso, for the purpose of overstaying her GT visa without being detected by immigration officials.

11. On or about November, 2005, Hee Jeong JANG gave her passport to MI KYUNG BOSLEY for the purpose of remaining on Guam to work at the Apple Lounge without being detected by immigration officials.

12. On or about November, 2005, MI KYUNG BOSLEY gave IN HYUK KIM a passport belonging to Yeju An JANZEN for the purpose of removing the I-94 Departure Form from Janzen's passport so that she would remain on Guam and work at the Apple Lounge, without being detected by immigration officials.

13. On November 6, 2006, MI KYUNG BOSLEY accepted $1,400 in United States currency for the purpose of ensuring that the I-94 forms which had been issued to Korean nationals Su Jeong CHOI, Ji Young AN, and Jang Mi BYEON, when they entered Guam as tourists on the Korean tourist visa waiver program, were entered into the Treasury Enforcement Communication System (TECS) computer system, to make it appear they had departed Guam.

14. On November 6, 2006, MI KYUNG BOSLEY gave IN HYUK KIM $1,200 in United States currency and copies of passports and I-94 forms for three Korean nationals, Su Jeong Choi, Ji Young An and Jang Mi Byeon;

15. On November 17, 2006, MI KYUNG BOSLEY accepted $800 in United States currency for the purpose of ensuring that an I-94 form which had been issued to Korean national Mi Sun IM when she entered Guam as a tourist on the Korean tourist visa waiver program, was entered into TECS to make it appear she had departed Guam, and to ensure that Korean national Jang Mi BYEON would be able to leave Guam without having to surrender her I-94 form to U.S. Customs and Border Protection;

16. On November 17, 2006, MI KYUNG BOSLEY gave IN HYUK KIM $800 in United States currency and copies of the I-94 form for Mi Sun IM;

17. On November 17, 2006, MI KYUNG BOSLEY telephoned another individual to report that IN HYUK KIM needed thc e-ticket number or airline ticket of Jang Mi BYEON;

18. On January 16, 2007, IN HYUK KIM met another individual at King's Restaurant in Harmon to discuss the status of the I-94 forms in the names of Su Jeong CHOI, Ji Young AN, Jang Mi BYEON, and Mi Sun IM,

ALL IN VIOLATION of Title 18, United States Code, Sections 2 and 371.

**COUNT II - ALIEN SMUGGLING**

On or about April, 2005, within the District of Guam, the defendants herein, MI KYUNG BOSLEY and IN HYUK KIM, knowing that an alien remained in the United States in violation of law, did unlawfully and knowingly conceal, harbor, and shield from detection, and did attempt to conceal, harbor, or shield from detection, such alien, to-wit: Youn Kyung OH, for the purpose of commercial advantage and private financial gain.

ALL IN VIOLATION of Title 18, United States Code, Section 2 and Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

**COUNT III - ALIEN SMUGGLING**

On or about April, 2005, within the District of Guam, the defendants herein, MI KYUNG BOSLEY and IN HYUK KIM, knowing that an alien remained in the United States in violation of law, did unlawfully and knowingly conceal, harbor, and shield from detection, and did attempt to conceal, harbor, or shield from detection, such alien, to-wit: Hee Jeong JANG, for the purpose of commercial advantage and private financial gain.

ALL IN VIOLATION of Title 18, United States Code, Section 2 and Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (a)(1)(B)(I).

**COUNT IV - ALIEN SMUGGLING**

On or about April, 2005, within the District of Guam, the defendants herein, MI KYUNG BOSLEY and IN HYUK KIM, knowing that an alien remained in the United States in violation of law, did unlawfully and knowingly conceal, harbor, and shield from detection, and did attempt to conceal, harbor, or shield from detection, such alien, to-wit: Yeju An JANZEN, for the purpose of commercial advantage and private financial gain.

ALL IN VIOLATION of Title 18, United States Code, Section 2 and Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

9(b). To establish the offense of Conspiracy in violation of Title 18, United States Code, Section 371, the government must prove the following elements beyond a reasonable doubt:

> First: beginning on or about the dates charged in the indictment, there was an agreement between two or more persons to commit the crime of alien smuggling as charged in the indictment;
>
> Second: the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and
>
> Third: one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy, with the jury all agreeing on the particular overt act committed.

9(c). To establish the offense of Alien Smuggling for commercial profit or financial gain, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iii), the government must prove each of the following elements beyond a reasonable doubt:

> First, the defendant concealed, harbored, or shielded from detection, or attempted to conceal, harbor, or shield from detection, an alien;
>
> Second, the defendant knew or was in reckless disregard of the fact that the alien had come to, entered or remained in the United States in violation of law; and
>
> Third, the defendant committed this act for the purpose of commercial advantage or private financial gain.

9(d). A defendant may be found guilty of alien smuggling even if the defendant personally did not commit the act or acts constituting the crime but caused or aided and abetted in its commission. To prove a defendant guilty of aiding and abetting, a violation of Title 18, United States Code, Section 2, the government must prove beyond a reasonable doubt each of the following elements:

First, the charged crime was committed by someone;

Second, the defendant knowingly and intentionally aided, counseled, commanded, induced, procured or caused that person to commit the charged crime; and

Third, the defendant acted before the crime was completed.

10. The United States of America has jurisdiction over this offense because it was committed on Guam, which is a territory of the United States and subject to the jurisdiction of the United States pursuant to Title 18, United States Code, Section 5, which provides that the term United States "includes all places and waters, continental or insular, subject to the jurisdiction of the United States, except the Canal Zone."

11. The facts and circumstances supporting this request for extradition are set forth in the Affidavit of Immigration and Customs Enforcement (ICE) Special Agent Richard N. Flores, attached hereto as Exhibit E. I have reviewed the Affidavit of Agent Flores, and believe it fully and accurately sets forth the facts supporting the indictment of this defendant.

//

//

//

//

//

//

//

//

//

//

12. The following exhibits are annexed to this affidavit and are incorporated by rcference herein:

Exhibit A - Superseding Indictment

Exhibit B - Arrest warrant

Exhibit C - Copies of applicable statutes

Exhibit D - Affidavit of ICE Special Agent Richard N. Flores.

Dated: Hagatna, Guam
Territory of Guam
United States of America
April 28, 2008

KARON V. JOHNSON
Assistant U.S. Attorney
Districts of Guam and NMI

I hereby certify that this is the original affidavit sworn to and subscribed to before me by Karon V. Johnson on April 28, 2008, in Hagatna, Territory of Guam, United States of America.

JOAQUIN V.E. MANIBUSAN, JR.
U.S. Magistrate Judge
District Court of Guam

ORIGINAL

bosley-kimind2

LEONARDO M. RAPADAS
United States Attorney
KARON V. JOHNSON
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for the United States of America

FILED
DISTRICT COURT OF GUAM
MAR 12 2008 mbc
JEANNE G. QUINATA
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE TERRITORY OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>MI KYUNG BOSLEY, aka Mi Kyung Park, and IN HYUK KIM, aka Dominic,<br>Defendants. | CRIMINAL CASE NO. 07-00064<br>**SUPERSEDING INDICTMENT**<br>**CONSPIRACY TO COMMIT ALIEN SMUGGLING**<br>[18 U.S.C. §§ 2 & 371]<br>(Count I)<br>**ALIEN SMUGGLING**<br>[8 U.S.C. §§ 1324(a)(1)(A)(iii) & (a)(1)(B)(i)<br>(Counts II, III & IV) |

THE GRAND JURY CHARGES:

**COUNT I - CONSPIRACY TO COMMIT ALIEN SMUGGLING**

**INTRODUCTION**

1. At all times relevant to this Indictment, the United States Immigration and Naturalization Service offered a Guam Tourist Visa Waiver program (GT program) which allowed Korean citizens to enter Guam as tourists for a limited period of 15 days. The program applied only to such persons who were seeking entry as tourists. It did not allow Korean citizens to enter Guam for the purposes of employment, or to be employed on Guam during the 15 days. Korean citizens gaining entry under the GT program were required to depart Guam fifteen days

GOVERNMENT EXHIBIT A

from the date of entry. If they failed to do so, they remained on Guam illegally and in violation of United States immigration law.

2. Upon arrival at the Guam International Airport, Korean citizens seeking entry under the GT program were required to execute two forms, an I-736 Guam Visa Waiver Application and a I-94 Arrival/Departure Record. The I-94 form was divided into two parts: the upper half was a record of arrival, and the lower half was a record of departure. Applicants under the GT Program were required to submit both forms and their valid passports to a Customs and Border Protection (CPB) officer. If the officer approved entry, he would stamp the applicant's passport, I-94 and I-736 forms, thereby certifying that the applicant met the entry requirements under the GT program. The CPB officer would retain the I-736 form and the top portion of the I-94 (Arrival Record) form. He would staple the bottom part of the I-94 (Departure Record) into the applicant's passport. The stamp would indicate that the GT visa was valid for only 15 days from date of entry.

3. Under the GT program, CPB officers would mail the I-736 and the top part of the I-94 forms to ACS-INS-SBU, the Processing or Data Input Center. Each Korean citizen's name, passport number and date of entry would be entered into the Treasury Enforcement Computer System (TECS).

4. Upon departure under the GT program, Korean citizens were required to submit their passports to the airlines ticket counter employee when checking in for their departing flight. The airlines employee was required to remove the Departure Record portion of the I-94 form, which had been stapled to the passport. The airline was required to collect all such I-94 Departure Records for passengers on that flight, and submit the I-94 Departure Records and a copy of the passenger manifest to CBP officials. In turn, CBP officials would mail the collected I-94 Departure Records to ACS-INS-SBU for input into the TECS system. In that manner, CBP would have a record of the entry and departure date for each Korean citizen who had been admitted to Guam under the GT program.

5. Some nightclubs, karaoke lounges and bars on Guam were owned by Koreans, who desired to employ Korean women in their businesses. Women entering Guam under the GT Program were not eligible to work in these clubs. However, some Korean club owners would solicit Korean women to enter Guam under the GT program, and also solicit them to remain on Guam illegally for purposes of employment in their clubs.

6. IN HYUK KIM was employed as a ticket agent with Korean Air. MI KYUNG BOSLEY owned the Apple Lounge.

OBJECT OF THE CONSPIRACY

7. The object of the conspiracy was the concealment by MI KYUNG BOSLEY, IN HYUK KIM, and others both known and unknown to the Grand Jury, of the employment by nightclubs and bars of Korean women who had entered Guam under the GT program and who had been induced to remain on Guam illegally and continue working, after their 15-day period had expired.

MANNER AND MEANS OF THE CONSPIRACY

8. The conspiracy was accomplished by MI KYUNG BOSLEY and others both known and unknown to the Grand Jury, representing to women who had entered Guam under the Korean GT Program, that there was a way by which they could work on Guam without detection by the immigration authorities. MI KYUNG BOSLEY and others both known and unknown to the Grand Jury, took the passports from the women who had agreed to remain on Guam, and gave them to IN HYUK KIM. MI KYUNG BOSLEY and others both known and unknown to the Grand Jury, paid IN HYUK KIM between $300 and $400 per employee, for the purpose of filing the I-94 Departure Records so that it appeared the women had left Guam. The bar owners and the women so employed believed that women's overstays would not be detected by the agencies which enforced United States immigration laws because IN HYUK KIM represented he had filed the I-94 Departure Records with Customs & Border Protection.

9. On or between January, 2005, and January 30, 2007, within the District of Guam and elsewhere, the defendants herein, MI KYUNG BOSLEY and IN HYUK KIM, did unlawfully, willfully, and knowingly combine, conspire, confederate and agree with each other and with other persons both known and unknown to the Grand Jury, to commit an offense against the United States, to-wit: alien smuggling for commercial advantage and financial gain, in violation of Title 8, U.S.C. § 1324(a)(1)(A)(iii), and did commit overt acts in furtherance of said conspiracy and to achieve the object thereof, to-wit:

10. On or about April, 2005, Youn Kyung OH gave her passport to Jin Yu, the owner of the nightclub Club Miso, for the purpose of overstaying her GT visa without being detected by immigration officials.

11. On or about November, 2005, Hee Jeong JANG gave her passport to MI KYUNG BOSLEY for the purpose of remaining on Guam to work at the Apple Lounge without being detected by immigration officials.

12. On or about November, 2005, MI KYUNG BOSLEY gave IN HYUK KIM a passport belonging to Yeju An JANZEN for the purpose of removing the I-94 Departure Form from Janzen's passport so that she would remain on Guam and work at the Apple Lounge, without being detected by immigration officials.

13. On November 6, 2006, MI KYUNG BOSLEY accepted $1,400 in United States currency for the purpose of ensuring that the I-94 forms which had been issued to Korean nationals Su Jeong CHOI, Ji Young AN, and Jang Mi BYEON, when they entered Guam as tourists on the Korean tourist visa waiver program, were entered into the Treasury Enforcement Communication System (TECS) computer system, to make it appear they had departed Guam.

14. On November 6, 2006, MI KYUNG BOSLEY gave IN HYUK KIM $1,200 in United States currency and copies of passports and I-94 forms for three Korean nationals, Su Jeong Choi, Ji Young An and Jang Mi Byeon;

15. On November 17, 2006, MY KYUNG BOSLEY accepted $800 in United States currency for the purpose of ensuring that an I-94 form which had been issued to Korean national Mi Sun IM when she entered Guam as a tourist on the Korean tourist visa waiver program, was entered into TECS to make it appear she had departed Guam, and to ensure that Korean national Jang Mi BYEON would be able to leave Guam without having to surrender her I-94 form to U.S. Customs and Border Protection;

16. On November 17, 2006, MY KYUNG BOSLEY gave IN HYUK KIM $800 in United States currency and copies of the I-94 form for Mi Sun IM;

17. On November 17, 2006, MY KYUNG BOSLEY telephoned another individual to report that IN HYUK KIM needed the e-ticket number or airline ticket of Jang Mi BYEON;

18. On January 16, 2007, IN HYUK KIM met another individual at King's Restaurant in Harmon to discuss the status of the I-94 forms in the names of Su Jeong CHOI, Ji Young AN, Jang Mi BYEON, and Mi Sun IM,

ALL IN VIOLATION of Title 18, United States Code, Sections 2 and 371.

## COUNT II - ALIEN SMUGGLING

On or about April, 2005, within the District of Guam, the defendants herein, MY KYUNG BOSLEY and IN HYUK KIM, knowing that an alien remained in the United States in violation of law, did unlawfully and knowingly conceal, harbor, and shield from detection, and did attempt to conceal, harbor, or shield from detection, such alien, to-wit: Youn Kyung OH, for the purpose of commercial advantage and private financial gain.

ALL IN VIOLATION of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

## COUNT III - ALIEN SMUGGLING

On or about April, 2005, within the District of Guam, the defendants herein, MY KYUNG BOSLEY and IN HYUK KIM, knowing that an alien remained in the United States in violation of law, did unlawfully and knowingly conceal, harbor, and shield from detection, and

1  did attempt to conceal, harbor, or shield from detection, such alien, to-wit: Hee Jeong JANG, for
2  the purpose of commercial advantage and private financial gain.
3      ALL IN VIOLATION of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and
4  (a)(1)(B)(i).

## COUNT IV - ALIEN SMUGGLING

6      On or about April, 2005, within the District of Guam, the defendants herein, MY
7  KYUNG BOSLEY and IN HYUK KIM, knowing that an alien remained in the United States in
8  violation of law, did unlawfully and knowingly conceal, harbor, and shield from detection, and
9  did attempt to conceal, harbor, or shield from detection, such alien, to-wit: Yeju An JANZEN,
10 for the purpose of commercial advantage and private financial gain.
11     ALL IN VIOLATION of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and
12 (a)(1)(B)(i).
13     Dated this __12th__ day of March, 2008.

14                                A TRUE BILL.

18  LEONARDO M. RAPADAS                      REDACTED
19  United States Attorney
    Districts of Guam and NMI

21  By:                                   I hereby certify that the
                                          annexed instrument is a
22  KARON V. JOHNSON                      true copy of the original
    Assistant U.S. Attorney              on file in my office.
23                                        ATTEST: CLERK OF COURT
    Reviewed:                             District Court of Guam
24                                        Territory of Guam
25  By:                                   By:
26  JEFFREY J. STRAND                        Deputy Clerk
    First Assistant U.S. Attorney
27
28                          -6-

# UNITED STATES DISTRICT COURT

District of GUAM

UNITED STATES OF AMERICA

V.

MI KYUNG BOSLEY
aka Mi Kyung Park

## WARRANT FOR ARREST

Case Number: CR-07-00064-001

ORIGINAL

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest MI KYUNG BOSLEY aka Mi Kyung Park
Name

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

- ☑ Indictment
- ☐ Information
- ☐ Complaint
- ☐ Order of court
- ☐ Pretrial Release Violation Petition
- ☐ Probation Violation Petition
- ☐ Supervised Release Violation
- ☐ Violation Notice

charging him or her with (brief description of offense)

Conspiracy to Commit Alien Smuggling, 18 U.S.C. §§ 2 and 371, Count 1

Alien Smuggling, 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (a)(1)(B)(i)

☐ in violation of Title ______ United States Code, Section(s) ______

☐ in violation of the conditions of his or her pretrial release imposed by the court.

☐ in violation of the conditions of his or her supervision imposed by the court.

| MARILYN B. ALCON | Marilyn B. Alcon |
|---|---|
| Name of Issuing Officer | Signature of Issuing Officer |
| Deputy Clerk | 03/12/2008 Hagatna, Guam |
| Title of Issuing Officer | Date and Location |

## RETURN

This warrant was received and executed with the arrest of the above-named individual at

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

GOVERNMENT EXHIBIT B

I hereby certify that the annexed instrument is a true copy of a copy on file in my office.
ATTEST: CLERK OF COURT
District Court of Guam
Territory of Guam
By: [signature]
Deputy Clerk

**THE FOLLOWING IS FURNISHED FOR INFORMATION ONLY:**

DEFENDANT'S NAME: MI KYUNG BOSLEY aka Mi Kyung Park

ALIAS: ________________

LAST KNOWN RESIDENCE: ________________

LAST KNOWN EMPLOYMENT: ________________

PLACE OF BIRTH: ________________

DATE OF BIRTH: ________________

SOCIAL SECURITY NUMBER: ________________

HEIGHT: __________ WEIGHT: __________

SEX: __________ RACE: __________

HAIR: __________ EYES: __________

SCARS, TATTOOS, OTHER DISTINGUISHING MARKS: ________________

FBI NUMBER: ________________

COMPLETE DESCRIPTION OF AUTO: ________________

INVESTIGATIVE AGENCY AND ADDRESS: ________________

**18 U.S.C. § 371 - Conspiracy to commit offense or to defraud United States**

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

GOVERNMENT
EXHIBIT
C

**18 U.S.C. § 3282 - Offenses not capital**

(a) In general - Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

**18 U.S.C. § 2 - Principals**

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**8 U.S.C. § 1324 - Bringing in and harboring certain aliens**

(a) Criminal penalties

(1)(A) Any person who –

(iii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation;

(v)(I) engages in any conspiracy to commit any of the preceding acts, or

(II) aids or abets the commission of any of the preceding acts,

shall be punished as provided in subparagraph (B).

(B) A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs –

(i) in the case of a violation of subparagraph(A)(I) or (v)(I) or in the case of a violation of subparagraph (A)(ii), (iii), or (iv) in which the offense was done for the purpose of commercial advantage or private financial gain, be fined under Title 18, imprisoned not more than 10 years, or both;

(3) Prima facie evidence in determinations of violations

In determining whether a violation of subsection (a) of this section has occurred, any of the following shall be prima facie evidence that an alien involved in the alleged violation had not received prior official authorization to come to, enter, or reside in the United States or that such alien had come to, entered, or remained in the United States in violation of law:

(A) Records of any judicial or administrative proceeding in which that alien's status was an issue and in which it was determined that the alien had not received prior official authorization to come to, enter, or reside in the United States or that such alien had come to, entered or remained in the United States in violation of law.

(B) Official records of the Service or of the Department of State showing that the alien had not received prior official authorization to come to, enter, or reside in the United States or that such alien had come to, entered, or remained in the United States in violation of law.

(C) Testimony, by an immigration officer having personal knowledge of the facts concerning that alien's status that the alien had not received prior official authorization to come to, enter, or reside in the United States or that such alien had come to, entered, or remained in the United States in violation of law.

LEONARDO M. RAPADAS
United States Attorney
KARON V. JOHNSON
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for United States of America

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE TERRITORY OF GUAM**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>MI KYUNG BOSLEY, aka<br>MI KYUNG PARK.,<br>Defendant. | CRIMINAL CASE NO. 07-00064<br>**AFFIDAVIT OF RICHARD N FLORES IN SUPPORT OF REQUEST FOR EXTRADITION** |

I, RICHARD N. FLORES, being first duly sworn, do depose and say:

1. I am a citizen of the United States.

2. I am a Special Agent of Immigration and Customs Enforcement (ICE) and have been a Special Agent (S/A) for ten months. I am currently assigned to ICE Guam Office. I have reviewed investigative reports and evidence concerning the investigation conducted by ICE of the criminal activities of MI KYUNG BOSLEY, aka MI KYUNG PARK, and In Hyuk Kim. The reports reveal the following information.

3. Guam has a Korean Tourist Visa Waiver program which allows Korean citizens to enter Guam as tourists for 15 days, without applying for a visa in advance of their entry to the United States. When a Korean citizen who wishes to enter as a tourist arrives at the Guam International Airport, he receives two forms, an I-736 Guam Visa Waiver Information form, and a Form I-94, which consists of two parts. The tourist is required to execute the I-736 and the entire I-94. When he passes through Customs & Border Protection (CBP), the inspector collects the I-736

GOVERNMENT EXHIBIT D

form and the top part of the I-94 form. The bottom portion of the I-94 is stapled into the tourist's passport. The two forms retained by the CBP inspector are mailed to ACS-INS-SBU Data Input Center, which enters this arrival information into the Treasury Enforcement Computer System (TECS). Thus, CBP has a record of the tourist's date of entry.

4. When the tourist returns to Korea, he presents his passport to an airline ticket counter employee, and the airline employee removes the remaining part of the I-94 form from the tourist's passport. The I-94 forms provided by the passengers and the flight passenger manifest are submitted by the airline to CBP. In turn, an agent of CBP mails the collected I-94 forms to the Data Input Center, where the date of the tourist's departure is entered into the computer.

5. Beginning in early 2006, ICE Special Agent John Duenas received information that many of the Korean women working at night clubs and bars in the Tumon Bay tourist area had entered Guam on the Korean tourist visa waiver program and had overstayed their 15-day limit for the purposes of obtaining employment. The informant told S/A Duenas that the owners of these night clubs were giving their employees' I-94 forms to an employee of Korean Air, and paying this individual to file the I-94 forms so that it would appear that the Korean women had returned to Korea, when in fact they were still employed on Guam. The informant identified the Korean Air employee as In Hyuk Kim, and further said that one of the nightclub owners was MI KYUNG BOSLEY, aka MI KYUNG PARK.

6. S/A Duenas caused the informant to approach MI KYUNG BOSLEY. Acting at the direction of S/A Duenas and other ICE agents, the informant asked MI KYUNG BOSLEY if she would help him keep certain Korean citizens on Guam, by filing their I-94 Forms to make it appear that they had left within the prescribed 15 days. MI KYUNG BOSLEY agreed. On November 6, 2006, the informant met MI KYUNG BOSLEY and gave her copies of the passports and I-94 numbers for three individuals whom he represented had entered Guam as Korean tourists and had overstayed their 15-day limit. At that time MI KYUNG BOSLEY accepted $1,400 from the informant. After the meeting, ICE agents followed MI KYUNG BOSLEY and observed her deliver the documents In Hyuk Kim, for the purpose of causing the I-

94 forms to be entered into the TECS computer. MI KYUNG BOSLEY and In Hyuk Kim believed these three women had remained on Guam.

7. On November 17, 2006, MI KYUNG BOSLEY met with the informant again and accepted $800 for the purpose of ensuring that an I-94 form purportedly issued to a fourth Korean tourist would be delivered to In Hyuk Kim, so that he would enter it into the TECS system, again to reflect that this person had left Guam. MI KYUNG BOSLEY was followed and observed to meet with In Hyuk Kim again. Later, the informant was present with MI KYUNG BOSLEY when In Hyuk Kim telephoned her and asked for the e-ticket number of this "tourist.".

8. On January 16, 2007, In Hyuk Kim met personally with the ICE informant to discuss the status of the I-94 forms which he had received from MI KYUNG BOSLEY.

9. On July 25, 2007, In Hyuk Kim and MI KYUNG BOSLEY were indicted by a federal grand jury and the District Court of Guam issued a warrant for their arrest. On July 31, 2007, ICE S/A Duenas and other agents arrested In Hyuk Kim, who waived his Constitutional right to remain silent and agreed to speak to S/A Duenas. In Hyuk Kim told S/A Duenas the following:

(a) In Hyuk Kim was employed by Korean Air and worked as a customer service agent. In that capacity, he routinely removed Korean tourists' I-94 forms from their passports and collected them for submission to CBP. Beginning sometime in 2003, In Hyuk Kim agreed to a scheme proposed by Won Bae Suh, who owned a nightclub which employed Korean women who had entered as tourists but overstayed their 15-day visa. These women were remaining on Guam unlawfully and in violation of United States immigration laws. In Hyuk Kim agreed to file the I-94 departure form for one of Suh's employees, to make it appear that the employee had left Guam, when in fact the employee remained on Guam working. Subsequently, In Hyuk Kim prematurely filed I-94 forms for approximately 24 Korean citizens who had overstayed their tourist visas and remained on Guam. When these individuals desired to leave Guam, defendant would change information such as their date of birth, so that a different person was reflected on the passenger manifest than the person who was actually leaving.

(b) In Hyuk Kim told S/A Duenas that in 2006, MI KYUNG BOSLEY had given him I-94 forms and documentation for four Korean women, and that he had received $1,200 from her to falsely submit the I-94 forms for entry in the TECS computer. He said that he had not submitted these forms to CBP as he had agreed, because he heard rumors that there was an ICE investigation at the Guam International Airport. Kim advised, however, that he had continued to help nightclub employees who had unlawfully overstayed their tourist visas to return to Korea, by submitting false biographical information when they checked in for the Korean Air flight home.

11. Since In Hyuk Kim's arrest, this investigation has continued. On February 20, 2008, I interviewed Yeju An Janzen, who told me that she first came to Guam on November 8, 2005, as a Korean tourist. She said that during the 15 days she was on Guam, she worked for MI KYUNG BOSLEY at her business, the Apple Lounge. MY KYUNG BOSLEY asked Janzen to overstay her tourist visa and keep working, and told Janzen that there was a way for her to stay without getting into trouble. Janzen decided to return to Korea. A few days after Janzen had returned to Korea, MI KYUNG BOSLEY telephoned her and asked her to come back to work. On December 2, 2005, Janzen returned to Guam, again as a Korean tourist, and went to work at the Apple Lounge. On or about her fifteenth day, MI KYUNG BOSLEY told Janzen she would fix the overstay, and took Janzen's passport, which had the I-94 departure form stapled in it. Later the same day, Janzen saw MI KYUNG BOSLEY talking to In Hyuk Kim, and saw MI KYUNG BOSLEY give her passport to In Hyuk Kim, who put it into his pocket and left. Janzen said that when she later received her passport back, the I-94 departure form had been removed.

12. On February 20, 2008, I talked to Hee Jeong Jang, who told me that she first came to Guam in early November, 2005, in the company of Yeju An Janzen, and that MI KYUNG BOSLEY also asked her to work at the Apple Lounge. Prior to the expiration of her visa, MI KYUNG BOSLEY asked Jang to remain on Guam and told her there was a way to fix it so that she would not get in trouble with immigration. Jang agreed, and gave MI KYUNG BOSLEY her passport. Jang told me that when she got her passport back, the I-94 departure form had been removed.

13. On February 21, 2008, I met with ICE Special Agent Steven Marceleno, who had interviewed a Korean citizen, Youn Kyung Oh, who was in custody in Honolulu. According to Agent Marceleno, Oh had been arrested for entering the United States using a false passport and visa. The TECS printout reflected that she had initially entered Guam April 4, 2005, as under the Korean tourist visa waiver program. During an interview Oh told Agent Marceleno that she had traveled to Guam for the purpose of working at the Club Miso, which was owned by a woman named Jin Yu. Oh said that Yu told Oh she could remain on Guam working, without getting into trouble with the immigration authorities. Yu told Oh that a Korean Airline employee could arrange this for her. Oh said that Yu took her passport, and that when Oh received it back, the I-94 departure form was missing. I have reviewed documents on file at the Guam Department of Revenue and Taxation, which reflect that as of March 3, 2005, MI KYUNG BOSLEY was listed as the manager of the club Miso.

14. I have examined the "A" file concerning MI KYUNG BOSLEY. Every alien who submits any applications, or who has any contact with United States agencies which enforce the United States immigration laws, is assigned an Alien Registration Number, or "A" number, which is unique to that person. The A file is the repository for all documents and records of any actions concerning that particular alien. MI KYUNG BOSLEY's A number is 076208172. Her A file reflects that Eric Scott Bosley, a U.S. citizen, filed an I-130 Petition for Alien Relative, based upon the fact that he had married MI KYUNG PARK on April 28, 2001. The Petition was filed August 5, 2002, and duly adjudicated. The petition reflects that MI KYUNG BOSLEY has the biographical data set forth below in ¶ 10. The Petition was granted on October 10, 2003. Accordingly, MI KYUNG BOSLEY was given lawful permanent residence status because she had married a United States citizen, and she was issued an I551 card, a permanent resident alien card commonly known as a "green card." The A file further reflects that on July 10, 2007, MI KYUNG BOSLEY came into the Agana Application Support Center, a division of the Bureau of Citizenship and Immigration Services (CIS), and applied to replace a lost green card. At that time, she was photographed, fingerprinted, and her biographical data was confirmed. MI

KYUNG BOSLEY's A file also contains a photocopy of her Korean passport which expired January 16, 2006.

15. MI KYUNG BOSLEY, aka MI KYUNG PARK, is described as follows:

| | |
|---|---|
| Race: Asian | Place of Birth: Republic of Korea |
| Date of Birth: August 7, 1976 | Sex: Female |
| Height: 64 inches | Weight: approximately 125 pounds |
| Passport Number: SC0974944 | Korean ID Number: 2069726 |

16. I have reason to believe that MI KYUNG BOSLEY is in Korea. At the time of her indictment, ICE had entered her arrest warrant into the TECS system, so that the CBP passenger analysis unit could screen the manifests on any outgoing flights and prevent MI KYUNG BOSLEY from boarding a plane. The lookout, however, failed to specify her maiden name, MI KYUNG PARK. On August 10, 2007, MI KYUNG BOSLEY presented Document # GM9070013, in the name of MI KYUNG PARK, to a Korean Air representative and was allowed to board a plane for Korea.

17. I have talked to the administrative assistant for the Korean Vice-Consul General of Guam, Neung Kap Park. Mr. Park told me that on August 8, 2007, a woman calling herself MI KYUNG PARK attempted to apply for a replacement Republic of Korea passport. The Consulate refused to give her a replacement passport. Instead, the Consulate issued MI KYUNG PARK a temporary travel permit, Number GM9070013. This permit, which was issued on August 8, 2007, expired on August 14, 2007.

18. I have attached hereto, and incorporate by reference herein as Exhibit 1, the photograph of MI KYUNG BOSLEY, aka MI KYUNG PARK, which was taken on July 10, 2007, by agents of the CIS. I have attached hereto and incorporate by reference herein as Exhibit 2, the Biographic Information which MI KYUNG BOSLEY submitted as part of her I-130 Application, which reflects a Korean address of Song Do Dong 215-11 Ho, Seoul, Korea. This is the last known Korean address in the A file. I have also attached hereto, and incorporate by

reference herein Exhibit 3, which is the Family Census Register which MI KYUNG BOSLEY submitted as part of her I-130 Petition.

FURTHER AFFIANT SAYETH NAUGHT.

RICHARD N. FLORES
Special Agent
Immigration and Customs Enforcement

**SUBSCRIBED AND SWORN** to before me this 25th day of April, 2008.

Notary Public

NOREEN F. SORIAN
NOTARY PUBLIC
In and for Guam U.S.A.
My Commission Expires: Jan 12, 2010
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagatna, Guam

| Web-ISRS Detail Information | |
|---|---|
| **Receipt Number** | |
| MSC0740058115 | |
| **Alien Number** | |
| 076208172 | |
| **Name** | |
| BOSLEY, MI KYUNG | |
| **Date of Birth** | |
| 08/07/1976 | |
| **Country of Birth** | |
| KOREA, SOUTH | |
| **Form Number** | |
| I90 | |
| **Serial Number** | |
| 18423738 | |
| **Image Source** | |
| MSC | |
| **Image Capture Date** | |
| 07/10/2007 | |

Export | Close | Print

EXHIBIT 1

U.S. Department of Justice
Immigration and Naturalization Service

# BIOGRAPHIC INFORMATION

OMB No 1115-0066
Approval expires 4-30-85

| (Family name) | (First name) | (Middle name) | MALE / FEMALE | BIRTHDATE (Mo.-Day-Yr.) | NATIONALITY | FILE NUMBER |
|---|---|---|---|---|---|---|
| BOSLEY | Mi Kyung | None | [X] FEMALE | 08/07/1976 | Korean | A. ~~None~~ 76-203/72 |

ALL OTHER NAMES USED (Including names by previous marriages): PARK, Mi Kyung

CITY AND COUNTRY OF BIRTH: Seoul Korea

SOCIAL SECURITY NO. (If any): None

| | FAMILY NAME | FIRST NAME | DATE, CITY AND COUNTRY OF BIRTH (If known) | CITY AND COUNTRY OF RESIDENCE |
|---|---|---|---|---|
| FATHER | PARK | Seok Woo | 11/28/1955 Korea | Seoul, Korea |
| MOTHER (Maiden name) | KIM | Hwa Sun | 11/30/1955 Korea | Seoul, Korea |

| HUSBAND (If none, so state) OR WIFE — FAMILY NAME (For wife, give maiden name) | FIRST NAME | BIRTHDATE | CITY & COUNTRY OF BIRTH | DATE OF MARRIAGE | PLACE OF MARRIAGE |
|---|---|---|---|---|---|
| (Husband) BOSLEY | Eric | 09/21/1978 | Upshur County WV, USA | 04/28/2001 | Guam, USA |

FORMER HUSBANDS OR WIVES (If none, so state)

| FAMILY NAME (For wife, give maiden name) | FIRST NAME | BIRTHDATE | DATE & PLACE OF MARRIAGE | DATE AND PLACE OF TERMINATION OF MARRIAGE |
|---|---|---|---|---|
| None | | | | |

APPLICANT'S RESIDENCE LAST FIVE YEARS. LIST PRESENT ADDRESS FIRST

| STREET AND NUMBER | CITY | PROVINCE OR STATE | COUNTRY | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|---|---|
| 1511A Midway Drive | Yigo | Guam | USA | Apr | 2001 | PRESENT TIME | |
| Song Do Dong 215-11 Ho | Seoul | | Korea | May | 1996 | Apr | 2001 |

APPLICANT'S LAST ADDRESS OUTSIDE THE UNITED STATES OF MORE THAN ONE YEAR

| STREET AND NUMBER | CITY | PROVINCE OR STATE | COUNTRY | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|---|---|
| Song do Dong 215-11 Ho | Seoul | | Korea | May | 1996 | Apr | 2001 |

APPLICANT'S EMPLOYMENT LAST FIVE YEARS. (IF NONE, SO STATE.) LIST PRESENT EMPLOYMENT FIRST

| FULL NAME AND ADDRESS OF EMPLOYER | OCCUPATION (SPECIFY) | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|
| Unemployed | None | Aug | 1997 | PRESENT TIME | |
| Kim Jae [illegible] | [illegible] | [illegible] | [illegible] | May | [illegible] |

Show below last occupation abroad if not shown above. (Include all information requested above.)

None

THIS FORM IS SUBMITTED IN CONNECTION WITH APPLICATION FOR:
[ ] NATURALIZATION [ ] OTHER (SPECIFY)
[X] STATUS AS PERMANENT RESIDENT

SIGNATURE OF APPLICANT — DATE AUG [illegible]

Are all copies legible? [X] Yes

If your native alphabet is other than roman letters, write your name in your native alphabet here: X Bosley Mi Kyung

PENALTIES: SEVERE PENALTIES ARE PROVIDED BY LAW FOR KNOWINGLY AND WILLFULLY FALSIFYING OR CONCEALING A MATERIAL FACT

**APPLICANT:** **BE SURE TO PUT YOUR NAME AND ALIEN REGISTRATION NUMBER IN THE BOX OUTLINED BY HEAVY BORDER BELOW.**

| COMPLETE THIS BOX (Family Name) | (Given name) | (Middle name) | (Alien registration number) |
|---|---|---|---|
| BOSLEY | Mi Kyung | None | ~~None~~ A76 203 172 |

EXHIBIT 2

Form G-325 (Rev. 10-1-82) Y

(1) Ident.

〔별지 제25호서식〕

등부 년 제 호

Registered No. 2001- 60

# 인 증 서

# NOTARIAL CERTIFICATE

주호놀루루총영사관 하갓나 출장소

Consulate Agency of the Republic of Korea in Hagatna

Guam, U.S.A.

20208-06811일
93. 11. 10. 승인

210㎜×297㎜(인쇄용지(특급) 70g/㎡)

EXHIBIT 3

# FAMILY CENSUS REGISTER

| | |
|---|---|
| **PERMANENT ADDRESS** | : #194 Segok-ri Bongdam-eup Hwasung-kun Kyunggi-do |
| **DESCRIPTION** | : This family census register was formed upon report of marriage on October 29, 1998 and established a statutory branch family.<br>The name of administrative district was changed from "Bongdam-myun" to "Bongdam-eup" on April 1, 1998. |

| | |
|---|---|
| **HOUSEHOLDER** | : **Seok Woo PARK** |
| **DATE OF BIRTH** | : December 2, 1955 |
| **SEX** | : Male |
| **FATHER** | : Chan Won PARK |
| **MOTHER** | : Yeon Sun SHIM |
| **FAMILY ORIGIN** | : Beonnam |
| **FORMER REGISTER** | : Child of Chan Won PARK, the householder of #194 Segok-ri Bongdam-myun Hwasung-kun |
| **RESIDENT I.D. NO.** | : 551202-1067026 |
| **REMARKS** | : Born at #194 Segok-ri Bongdam-myun Hwasung-kun and this was reported by father on March 1, 1956.<br>Married to Hwa Sun KIM. this reported on October 29, 1978 and established a statutory branch family.<br>Divorced to Hwa Sun KIM by mutual agreement, this reported on May 12, 1999 and it was sent by the Chief of Youngdeungpo-ku Ward Office on the 20th of the same month. |

| | |
|---|---|
| **WIFE** | : Hwa Sun KIM |
| **DATE OF BIRTH** | : November 30, 1955 |
| **SEX** | : Female |
| **FATHER** | : Yong Woon KIM |
| **MOTHER** | : Seon Ja LIM |
| **NEW REGISTER** | : Kyung Hwan KIM. #188 Singil-dong Youngdeung-po-ku, Seoul, Korea |
| **RESIDENT I.D. NO.** | : 551130-2067014 |
| **REMARKS** | : Born at #188 Singil-dong Youngdeungpo-ku Seoul and this was reported by father on June 22, 1961. Married to Seok Woo PARK and this reported on October 29, 1978. Divorced to Seok Woo PARK by mutual agreement, this reported on May 12, 1999 and it was sent by the Chief of Youngdeungpo-ku Ward Office on the 20th of the same month. |

| | |
|---|---|
| **CHILD** | : **Mi Kyung PARK** |
| **DATE OF BIRTH** | : August 7, 1976 |
| **SEX** | : Female |
| **FATHER** | : Seok Woo PARK |
| **MOTHER** | : Hwa Sun KIM |
| **RESIDENT I.D. NO.** | : 760807-2069726 |
| **REMARKS** | : Born at #65 Sangdo-4dong Kwanak-ku and this was reported by father on February 28, 1979. |

| | |
|---|---|
| **CHILD** | : **Kyu Taek PARK** |
| **DATE OF BIRTH** | : March 8, 1980 |
| **SEX** | : Male |
| **FATHER** | : Seok Woo PARK |
| **MOTHER** | : Hwa Sun KIM |
| **RESIDENT I.D. NO.** | : 800308-1058420 |

**REMARKS** : Born at #13 Onsoo-dong Kuro-ku Seoul, this was reported by father on April 12, 1980 and it was sent by the Chief of Kuro Ward Office on April 15.1980.

This is to certify th[illegible] the above stated Family Census Register is not a variance with the original family cen[illegible] r[illegible]ister which is filed at this office.

THIS IS TO CERTIFY THAT THE ABOVE TRANSLATION IS CORRECT AND ACCURATE TO THE ORIGINAL ATTACHED.

WON SUN PARK
Interpreter-Translator
[illegible] Suite 101 W. Marine Dr.
[illegible] 9[illegible]10

Date : April 9, 2001
S/ AFFIXED OFFICIAL SEAL & STAMP
JAE MAN SHIM
CHIEF OF BONGDAM-EUP OFFICE
HWASUNG-SI KYUNGGI-DO, KOREA

SIGNED BY: ____________
MI KYUNG [illegible]R[illegible]

No.

본적 경기도 ~~화성 군~~ 봉담 ~~면~~ 읍 세곡 리壹九四 번지

서기壹九七八년拾월弐九일혼인신고에의하여일정본가분재(인)

서기 1998년 4월 1일 행정구역 명칭변경 (봉담면)을 (봉담읍)으로 경정

| 전호주와의 관계 | | | 전호적 | 화성군봉담면세곡리壹九四번지 호주 河賢元의 자 |
|---|---|---|---|---|
| 부 | 河賢元 | 남 | | |
| 모 | 梁連順 | 남 | 입적 또는 신호적 | |
| 호주 | 河錫雨 | | | |
| 주민등록번호 | 551202-1167026 | | 출생 | 서기 壹九五五년 拾弐월弐日 |

화성군 봉담면세곡리壹九四번지에서 출생 서기壹九五五년拾弐월弐日 부신고

서기壹九七八년拾월弐九일金和順과 혼인신고로 일정분가

1999년 5월 12일 김화순과 협의이혼신고, 동월20일 서울시 영등포구청장 송부

| | | | |
|---|---|---|---|
| 부 | 金龍 | 본 | 전호적 |
| 모 | 林 | | |
| | 제적 | 입적 또는 신호적 | 서울시 영등포구 신길동188 번지 김경환 |
| | 和順 | 출생 | 서기一九五三년 拾一월 拾일 |
| 주민등록번호 | 551130-2067014 | | |

서울특별시영등포구신길동一八八번지에서출생서기一九五一년一二월
一一일부신고(인)
서기一九七八년拾월一일 朴錫炳와 혼인신고(인)
1999년5월12일 박석우와 협의이혼신고,동월20일 서울시 영등포구청장
송부제적(인)

| | | | |
|---|---|---|---|
| 부 | 朴錫炳 | 본 | 전호적 |
| 모 | 金和順 녀 | | |
| | 美慶 | 입적 또는 신호적 | |
| | | 출생 | 서기一九七六년 八월七일 |
| 주민등록번호 | 760807-2069726 | | |

관악구신도림동六五번지에서출생서기一九七九년一一월八일
부신고(인)

No.

No.

| | | | |
|---|---|---|---|
| 부 | [illegible] | 본 | 전호적 |
| 모 | 金和順 녀 | | |
| 자 | 金一[illegible] | | 입적 또는 신호적 |
| 주민등록번호 | 800308-1058[illegible] | 출생 | 서기 壹九八拾 년 參월 八일 |

서울특별시 구로구 [illegible] 번지에서 출생 서기 壹九八拾년 四월 [illegible]일 신고 동월 四월 [illegible]일 구로구청장 송부

| | | | |
|---|---|---|---|
| 부 | | 본 | 전호적 |
| 모 | | | |
| | | | 입적 또는 신호적 |
| 주민등록번호 | | 출생 | 서기 년 |

3

# 정조대왕의 효심이 깃들인 고장

## 화 성 군

| 발급번호 | 873 | 증명기관 | 경기도화성시봉담읍장 |
| --- | --- | --- | --- |
| 담 당 자 | 지방행정서기 유성자 | 발급문의처 | 031) 227- 1300~2 |

위 등(초)본은 호적(제적)의 원본과 틀림없음을 인증합니다.

2001년 4 월 10 일

경기도 화성시 봉담읍장 심재만

4 — 4(2)

Case 1:07-cr-00064 Document 76 Filed 04/28/2008 Page 39 of 40

[별지 제34호서식]

위 번역문은 원문과 상위없음을 서약합니다.

. . .

서약인 인

I swear that the attached translation is true to the original.

signature

통부 년 제 호

인 증

위 은 본직의 면전에서 위 번역문이 원문과 상이없음을 확인하고 서명 날인하였다. 이 공관에서 위 인증한다.

년 월 일

Registered No. 2001 - 40

Notarial Certificate FAMILY CENSUS REGISTER personally appeared before me, confirmed that the attached translation is true to the original and subscribed his(her) name. This is hereby attested on this day of at this office.

HONG SU PARK
CONSUL

성명 : ㊞

직위 :

재외공관명칭 : 주호놀루루총영사관 하갓나 출장소

소재지 : 미국 하갓나

Consulate Agency of the Republic of Korea in Hagatna

Guam. U. S. A.

A No. 0001614588
Republic of Korea
영 수 필 증
US$2.00 재외공관 영사수입금

20208-07511일
93. 11. 10. 승인

210mm×297mm 인쇄용지(특급) 70g/㎡